UNITED STATES OF AMERICA ex
rel. DIXIE COMMUNICATIONS
SYSTEMS, INC.,

    Plaintiff,

      v.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; ICON
CONSTRUCTION, INC.; and J&J
MAINTENANCE, INC.,

    Defendants.

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

CV 118-210

## O R D E R

Before the Court are J&J Maintenance, Inc.'s ("Defendant
J&J") motion to dismiss (Doc. 6) and Defendant Travelers Casualty
and Surety Company of America's ("Defendant Travelers") motion to
dismiss (Doc. 10). Both motions argue Plaintiff's Complaint should
be dismissed for failure to state a claim pursuant to Federal Rule
of Civil Procedure 12(b)(6).

## I. BACKGROUND

The present dispute arises from a project at Fort Gordon
involving the construction and renovation of the Dwight D.
Eisenhower Army Medical Center's Fisher Army Dental Laboratory
(the "Project"). (Compl., Doc. 1, ¶ 10.) Defendant J&J was the

general contractor for the Project. (Id. ¶ 11.) Defendant J&J subcontracted with Defendant ICON to perform work on the Project. (Id. ¶ 12.) Defendant ICON subcontracted with Plaintiff to install alarm systems. (Id. ¶¶ 13-14; Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, Doc. 12, Ex. 6.) Defendant Travelers supplied the Project bond to Defendant J&J. (Compl., ¶ 11.)

Plaintiff completed the work required under its subcontract with Defendant ICON on December 6, 2017. (Id. ¶¶ 15-16.) Afterward, Plaintiff submitted a bill to Defendant ICON in the amount of $66,187.50, but Defendant ICON has yet to pay the invoice. (Id. ¶¶ 17-18, 22; Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, Ex. 1.) Defendant J&J also refused to pay Plaintiff for the alarm system installation. (Compl., ¶ 19.) Finally, Plaintiff sought payment from Defendant Travelers through Defendant J&J's bond. (Id. ¶ 23.) Defendant Travelers repudiated Plaintiff's request for payment. (Id.; Def. Travelers's Mot. to Dismiss, Doc. 10, Ex. A.)

The procedural posture of this case is more convoluted than generally expected at this stage of litigation. Plaintiff filed its Complaint asserting four claims against three defendants: (1) breach of contract; (2) quantum meruit; (3) a Miller Act bond claim; and (4) bad faith refusal to settle. (Compl., ¶¶ 24-46.) Defendants J&J and Travelers ("Moving Defendants") moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6), but Defendant ICON Construction, Inc. ("Defendant ICON")
offered no response to Plaintiff's Complaint.  On February 11, the
Clerk entered an entry of default as to Defendant ICON (Doc. 22),
and shortly thereafter, Defendant J&J filed a suggestion of
bankruptcy indicating Defendant ICON filed for Chapter 11
bankruptcy in the United States Bankruptcy Court for the Eastern
District of Texas (Docs. 24, 24-1).

In Moving Defendants' motions to dismiss, both pointed to
Plaintiff's failure to allege that it provided proper notice under
the Miller Act.  (Def. J&J's Mot. to Dismiss, Doc. 6, at 3; Def.
Travelers's Mot. to Dismiss, at 5-6.)  The Complaint alleges that
Plaintiff provided notice to Defendant Travelers more than ninety
days after completing work under the subcontract.  (See Compl.,
¶¶ 16, 21.)  Rather than amend its Complaint to allege it provided
proper notice, Plaintiff attached several documents to its
responses in opposition to the motions to dismiss.  (See Pl.'s
Opp'n to Def. J&J's Mot. to Dismiss, Exs. 1-9.)  Plaintiff then
argued Defendants' motions to dismiss should be converted to
motions for summary judgment.  (See Pl.'s Sur-Reply Opp'n to Def.
J&J's Mot. to Dismiss, Doc. 20, at 4.)  Based upon Plaintiff's
introduction of various documents in its opposition to the present
motions to dismiss, the Court addresses multiple issues involving
the introduction of extrinsic documents in addition to resolving
the present motions.

3

## II. DISCUSSION

Before proceeding to the merits of Moving Defendants' motions to dismiss, the Court must determine whether the extrinsic documents should be considered at this stage.

### A. External Documents

Generally, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court is restrained to consider the allegations within the four corners of the complaint. See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). An exception to the general rule is recognized "if [the extrinsic document] is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); accord Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1285 (11th Cir. 2007) (considering document attached to motion to dismiss because "it [was] referred to in the complaint, it [was] central to [the plaintiff's] . . . claim, . . . and neither party challenge[d] its authenticity"). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court," it "must convert the motion to dismiss into a summary judgment motion." FED. R. CIV. P. 12(d); SFM Holdings, 600 F.3d at 1339. Thus, the Court identifies the external documents; determines if the Court may consider them in conjunction with the present motions

to dismiss; and if not, concludes whether it will consider the documents thereby converting the present motions into summary judgment motions.

### 1. Plaintiff's Exhibits 1 and 6[1]

Plaintiff's Exhibit 1 is a bill Plaintiff submitted to Defendant ICON. (Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, Ex. 1.) Exhibit 6 appears to be a letter from Plaintiff's counsel to Defendant Travelers, dated July 30, 2018, attaching the subcontract between Plaintiff and Defendant ICON; applications for payment and other billing documents submitted by Plaintiff to Defendant ICON; and Plaintiff's counsel's letters to Defendant J&J and Defendant ICON dated March 28, 2018. (Id. Ex. 6.) These documents meet the exception for consideration.

Payment for Plaintiff's subcontract work is at the heart of this dispute. Accordingly, documents related to Plaintiff's attempts to seek payment for its work are central to Plaintiff's claims. Similarly, the subcontract serves as the foundation of the present action, especially considering Plaintiff asserts a breach of contract claim. See United States ex rel. TSI Tri-State Painting, LLC v. Fed. Ins. Co., No. CV 216-113, 2016 WL 7385715, at *4 (S.D. Ga. Dec. 20, 2016). Moreover, Plaintiff references both the bill and the subcontract in its Complaint, and Moving

---

[1] Exhibits 1 and 6 are attached to Plaintiff's response to Defendant J&J's motion to dismiss.

Defendants do not dispute the authenticity of these documents. (Compl., ¶¶ 14, 17.) Thus, the Court considers these documents without converting the present motions to dismiss into motions for summary judgment.[2]

   2. Plaintiff's Exhibits 2, 3, 5, 7, 8, and 9[3]

Exhibits 2, 3, 5, 7, 8, 9 appear to be communications between Plaintiff and Defendant J&J. (Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, Exs. 2, 3, 5, 7, 8, 9.) These communications are extrinsic documents falling outside the incorporation doctrine. First, the Court concludes these documents are not central to Plaintiff's claim. The Complaint makes no reference to specific communications made with the Defendants other than the alleged March 28, 2018 notice to Defendant Travelers. (See Compl.) Furthermore, the communications with Defendant J&J are not critical to proving Plaintiff's claim. The Complaint does not allege specific notice provided to Defendant J&J. Instead, Plaintiff asserts "Dixie's notice to the bond company could not be provided until March 28, 2018, because Dixie had no way of knowing the identity of the bond company." (Compl., ¶ 21.) Even if the

---

[2] Exhibit 6's inclusion of letters from Plaintiff's counsel does not prevent the Court from considering Exhibit 6 at the motion to dismiss stage. Two of the letters are dated March 28, 2018, the day that Plaintiff alleges it provided notice to Defendant Travelers. (Compl., ¶ 21.) Finally, although the initial letter contained in Exhibit 6 is dated July 30, 2018, Plaintiff alleges in the complaint that "Dixie submitted a claim for payment to Travelers under the bond." This reference to the alleged claim brings the letter within the allegations of the complaint.

[3] Exhibits 2, 3, 5, 7, 8, and 9 are attached to Plaintiff's responses to Defendant J&J's motion to dismiss and Defendant Travelers's motion to dismiss.

referenced documents support Plaintiff's allegation concerning the surety's identity, the Miller Act expressly requires notice to the contractor, not the bonding company:

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within [ninety] days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made.

40 U.S.C. § 3133(b)(2). Therefore, evidence pertaining to any alleged attempt by Defendant J&J to conceal the identify of its bondholder is not central to a Miller Act claim requiring notice to the contractor. Plaintiff's Complaint fails to allege notice to the contractor, Defendant J&J.

Second, Defendant Travelers challenged the authenticity of the communications in question. (Def. Travelers's Reply Supp. Mot. to Dismiss, Doc. 23, at 4-5.) In response, Plaintiff argues that the emails can be self-authenticated "[i]f it is not possible to depose the drafter of an email or call him or her at trial." (Pl.'s Sur-Reply Opp'n to Def. Travelers's Mot. to Dismiss, Doc. 26, at 4.) Of course, Plaintiff may not have deposed the email drafters yet because the present action is still in its early stages. Plaintiff does not assert that it will be impossible to authenticate the emails over the course of discovery.

Furthermore, the rule does not require the Court to determine authenticity; instead, it only requires a challenge to the authenticity.[4]   Because alleged concealment of the surety's identity is not central to a Miller Act claim, Plaintiff does not allege notice to Defendant J&J, and Defendant Travelers challenged the authenticity of the documents, the communications may not be considered at the motion to dismiss stage.

### 3. Howard Affidavit[5]

Next, the Court addresses the Affidavit of Mark Howard. (Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, Ex. 4.)   The Court is limited at the motion to dismiss stage to the facts as pleaded in the Complaint and attaching an affidavit to a response to a motion to dismiss is not a procedure for modifying the Complaint.   See LF Factors, LLC v. Witex USA Flooring, Inc., No. 4:11-CV-0299-HLM, 2012 WL 13028175, at *3 n.3 (N.D. Ga. Feb. 13, 2012) (refusing to consider affidavit presented by the plaintiff in response to motion to dismiss); Peerless Self Storage, LLC v. City of Rossville, No. 4:10-CV-0129-HLM, 2010 WL 11493633, at *2 (N.D. Ga. Oct. 20, 2010) ("[T]he [c]ourt could not have considered [the] affidavit in connection with the initial [m]otion to [d]ismiss . . . .");

---

[4] Without citing to authority interpreting the Federal Rules of Evidence, Plaintiff asserts the emails are self-authenticating.   The Court rejects Plaintiff's universal rule that emails bearing a company's logo and signature block are inherently authentic.
[5] The Howard Affidavit is attached to Plaintiff's response to Defendant J&J's motion to dismiss.

*McKerchie v. S. First Manor, LLC*, No. 07-61365-CIV, 2008 WL 2262048, at *2 n.3 (S.D. Fla. May 30, 2008) (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)) (refusing to consider affidavits on Rule 12(b)(6) motion). The Howard Affidavit falls outside the purview of incorporation.

### 4. Defendant Travelers's Exhibit

Defendant Travelers attached a copy of its October 26, 2018 bond denial letter to Plaintiff. (Def. Travelers's Mot. to Dismiss, Ex. A.) The denial of the bond payment is central to Plaintiff's claim, and Plaintiff does not challenge the authenticity of the letter. Plaintiff referenced the denial in its Complaint. (Compl., ¶ 23.) Therefore, the Court considers the letter in resolving the pending motions.[6]

## B. Conversion

Because the Court determined that Plaintiff submitted extrinsic evidence failing to meet the requirements of the incorporation doctrine, the next issue is whether the Court will convert Moving Defendants' motions to dismiss into motions for summary judgment. District courts possess discretion to "not consider" or "exclude" external evidence and refrain from converting a motion to dismiss into a motion for summary judgment. *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1232 (11th Cir. 2010).

---

[6] The Court notes that it only considers the factual assertions contained in Defendant Travelers's Exhibit to be incorporated.

The Court refrains from considering the unincorporated evidence here and thereby refuses to convert the present motions into motions for summary judgment. Plaintiff's implied proposition that a plaintiff can convert a defendant's motion to dismiss into a motion for summary judgment simply by attaching extrinsic evidence to its response is dubious. See Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc., No. 07-80767-CIV, 2008 WL 5111260, at *3 (S.D. Fla. Dec. 3, 2008) ("[The] [p]laintiff does not provide any support for its fundamental assumption that a non-moving party can convert a motion to dismiss into a motion for summary judgment by including extraneous material in its response. [The] [d]efendants' motion to dismiss refers only to the allegations contained in the Complaint, and does not refer to anything outside the pleadings. The Court sees no reason to consider the supporting materials, nor to convert [the] [d]efendants' motion into one for summary judgment.") (citing Ranch Realty, Inc. v. DC Ranch Realty, LLC, 614 F. Supp. 2d 983, 988 (D. Ariz. 2007) ("Plaintiff harbors the erroneous notion that including extraneous materials in opposition to Defendants' motion forces the Court to treat the motion as one for summary judgment.")).

The hesitation to convert a motion to dismiss to a motion for summary judgment in such circumstances exists for obvious reasons. If attaching extraneous documents to a response to a motion dismiss

successfully advanced an otherwise deficient Complaint to the motion for summary judgment stage, plaintiffs could effectively subvert the purpose of Rule 12(b)(6). The Federal Rules of Civil Procedure's liberal position regarding amending pleadings further supports not converting the present motions based upon Plaintiff's attempt to include extrinsic evidence. See FED. R. CIV. P. 15(a). For these reasons, the Court refuses to consider the extrinsic evidence and convert Moving Defendants' motions to motions for summary judgment.[7] The Court turns to the merits of the present motions to dismiss.

## C. Motions to Dismiss

### 1. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not

---

[7] Having determined it will not convert the motions to dismiss into motions for summary judgment by considering extrinsic evidence, the Court need not address whether, as Defendant Travelers argues, the Howard Affidavit is a "sham affidavit." (Def. Travelers's Reply Supp. Mot. to Dismiss, at 5-6.)

required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombley</u>, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,[8] to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." <u>Id.</u> "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Marshall</u>

---

[8] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1261 (11th Cir. 2006).

Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### 2. Breach of Contract[9]

Plaintiff's first count asserts a breach of contract claim against Defendant J&J.[10]  Defendant J&J argues it is entitled to dismissal of the claim because Plaintiff's only alleged contract related to the Project is the subcontract it entered with Defendant ICON, not Defendant J&J.  (Def. J&J's Mot. to Dismiss, at 4.) Plaintiff does not dispute this point and instead contends that Defendant J&J breached the implied duty of good faith and fair dealing. (Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, at 8.)  Under Georgia law, recovery for a breach of contract claim requires (1) a breach and (2) resulting damages arising from the breach.  Knight v. Beall's Outlet Stores, Inc., No. CV 215-166, 2017 WL 149810, at *5 (S.D. Ga. Jan. 13, 2017) (citing Kimball v. Better Bus. Bureau of W. Fla., 613 F. App'x 821, 824 (11th Cir. 2015) (applying Georgia law)).  "Of course, a contract must exist to have a breach thereof," and a breach of contract claim against a party with whom

---

[9] The Parties do not dispute that Georgia law governs Plaintiff's state law claims.

[10] Defendant Travelers moves to dismiss Plaintiff's breach of contract claim against it. (Def. Travelers's Mot. to Dismiss, at 6-7.) The complaint seemingly asserts a breach of contract claim against Defendants ICON and J&J, only. (Compl., ¶¶ 24-28.)  Yet, the Complaint prays the Court to enter judgment against Defendants "jointly and severally" without further specification. (Compl., Prayer for Relief, ¶ b.)  Plaintiff acknowledges that it makes no attempt to assert a breach of contract claim against Defendant Travelers. (Pl.'s Opp'n to Def. Travelers's Mot. to Dismiss, Doc. 15, at 6.)  Nevertheless, to the extent Plaintiff asserts a breach of contract claim against Defendant Travelers, that claim is **DISMISSED**.

the plaintiff has no contract must fail.  Id. (applying Georgia law).  Plaintiff correctly notes that the duty of good faith and fair dealing is implied in every Georgia contract, but Plaintiff points to no contract to which it was a party that Defendant J&J breached.

> Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.  Therefore, to prevail on [its] claim for breach of the duty of good faith and fair dealing, [the plaintiff] must establish that [the defendants] owed a contractual obligation.

Onbrand Media v. Codex Consulting, Inc., 687 S.E.2d 168, 174 (Ga. Ct. App. 2009) (internal citations and quotation marks omitted); see also ValuJet Airlines, Inc. v. Trans World Airlines, Inc., No. 1:95-cv-2896-GET, 1996 WL 557851, at *11 (N.D. Ga. July 12, 1996) ("[T]he duty of good faith and fair dealing exists only between parties to a contract.") (citing Jackson Elec. Membership Corp. v. Ga. Power Co., 364 S.E.2d 556, 558 (Ga. 1988)).

The Complaint makes no mention of a contract between Plaintiff and Defendant J&J, cites no contractual provision that Defendant J&J breached, and alleges no other basis allowing Plaintiff to recover from Defendant J&J for Defendant ICON's alleged breach of the subcontract.  Beyond a general statement regarding the covenant of good faith and fair dealing, Plaintiff offers no authority

supporting its unusual breach of contract theory.[11] (See Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, at 8.) The allegations in Plaintiff's Complaint, even accepted as true, fail to plausibly establish that Plaintiff is entitled to recover for breach of contract against Defendant J&J. Consequently, Plaintiff's Count I is dismissed for failure to state a claim.

### 3. Quantum Meruit

Next, Plaintiff asserts a quantum meruit cause of action against Defendant J&J.[12] Defendant J&J maintains that Georgia does not recognize a subcontractor's quantum meruit claim against a general contractor absent a contractual relationship. (Def. J&J's Mot. to Dismiss, at 4-5.) Plaintiff's only retort is that Plaintiff's work benefitted Defendant J&J. (Pl.'s Opp'n to Def. J&J's Mot. to Dismiss, at 9.)

"Under Georgia law, a . . . subcontractor may not recover against [a] . . . general contractor with whom it has no contractual relationship, based on the theory of unjust enrichment or implied contract; rather, it is limited to the statutory remedies provided by Georgia's lien statute . . . ." Hussey, Gay & Bell v. Ga. Ports Auth., 420 S.E.2d 50, 53 (Ga. Ct. App. 1992)

---

[11] Without authority, Plaintiff attempts to argue Defendant J&J breached the overall "contract for the Dental Lab." The complaint contains no allegations that Defendant J&J breached a contract to which Plaintiff was a party.

[12] Similar to the breach of contract claim, Defendant Travelers moves to dismiss Plaintiff's quantum meruit claim. See supra note 10. Again, Plaintiff concedes it is not attempting to assert a quantum meruit claim against Defendant Travelers, and therefore, to the extent it does assert such a claim, the claim is **DISMISSED**.

(quoting P.P.G. Indus. v. Hayes Constr. Co., 290 S.E.2d 347, 348 (Ga. Ct. App. 1982)). Plaintiff offers no authority in response. But, contrary to Moving Defendants' position, the analysis cannot end here. The United States Supreme Court has stated that "a lien cannot attach to [federal] Government property." J. W. Bateson Co., Inc. v. United States ex rel. Bd. of Trs. of Nat'l Automatic Sprinkler Indus. Pension Fund, 434 U.S. 586, 589 (1978) (quoting F. D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 122 (1974)). Given that Georgia's lien statute prohibits recovery on a state law quantum meruit claim, but federal law prevents state law liens from attaching to federal property, the issue becomes whether a party may assert a state law quantum meruit claim against the primary contractor for work performed on a federal public works project.

Absent briefing on the issue from the Parties, the Court undertakes the analysis on its own. The question is an unusual one. State law governs the quantum meruit claim, but the Miller Act mandates venue in federal court. 40 U.S.C. § 3133(b)(3). With the exclusive venue provision in the Miller Act, the question before the Court is unlikely to arise in state court. Accordingly, the Court is left to determine how Georgia courts would resolve this situation that they will never confront.

Hussey and P.P.G. make clear that when addressing a private or state public works project, a subcontractor with no contractual

relationship with a contractor must resort to state liens for recovery rather than quantum meruit. Therefore, an available remedy under the state lien statute is a condition to barring the common law remedy of quantum meruit. Neither case, however, addresses the present situation where a federal government project — to which state liens do not attach — is at issue. If, as stated in Hussey and P.P.G., the right to pursue a lien on the project precludes a quantum meruit claim, but state liens are unavailable as a matter of law on a federal public works project, the lien statute no longer stands in the way of a quantum meruit claim against the primary contractor.[13] The Court, therefore, denies,

---

[13] Defendants make no argument that the Miller Act bars recovery for quantum meruit under Georgia law in the same way that Georgia's lien statute bars recovery for quantum meruit. The Eleventh Circuit has noted that the "Miller Act bonds provide to workers and contractors on federal projects a remedy similar to the protection available under state mechanic lien statutes and similar laws from which federal property is exempt." United States ex rel. E. Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 780 (11th Cir. 1990). Despite the Miller Act's intent to protect "persons supplying labor or materials on a federal construction project" because those persons do not have the surety of a lien, J.W. Bateson Co., 434 U.S. at 589, the conclusion does not necessarily follow that the Miller Act bars a Georgia law quantum meruit claim the same way the Georgia lien statute does. For example, in J. Kinson Cook, Inc. v. Weaver, the Georgia Court of Appeals decided an appeal of a verdict in favor of plaintiff, a second-tier subcontractor on a local government project, on its claims under the relevant Georgia bonding statute and quantum meruit. 556 S.E.2d 831 (Ga. Ct. App. 2001). The Georgia Court of Appeals reversed the verdict as to both claims. First, as to the claim under the relevant bonding statute, the claim was time-barred. Id. at 833. Second, the Court reversed the quantum meruit claim for the familiar reason contained in Hussey and P.P.G. Id. at 833-34. Although the opinion does not indicate whether the parties in J. Kinson Cook raised the issue, the Court did not hold that the plaintiff's claim against the surety bond prohibited the plaintiff's quantum meruit claim. Because the Georgia lien statute barred the quantum meruit claim as opposed to the claim against the surety bond, it does not appear a federal Miller Act claim bars a Georgia quantum meruit claim. Moreover, Georgia courts have looked to quantum meruit to fill the gap when the statutory lien remedy is foreclosed. See Clover Cable of Ohio, Inc. v. Heywood, 392 S.E.2d 855, 859 (Ga. 1990) ("When a party entitled to a statutory lien has been prevented from perfecting such lien by the acts of the adverse party, it has been held that such a party is

17

on the grounds advanced by Defendant J&J, Defendant J&J's motion to dismiss Plaintiff's quantum meruit claim against it.

### 4. Miller Act

Plaintiff asserts a claim under the Miller Act, 40 U.S.C. §§ 3131 et seq., against Defendants J&J and Travelers. Moving Defendants point to Plaintiff's Complaint to show that Plaintiff failed to provide the statutorily required notice. The Miller Act requires a person having a contractual relationship with a subcontractor but no contractual relationship with a contractor to provide "written notice to the contractor within [ninety] days from the date on which the person did or performed the last of the labor." 40 U.S.C. § 3133(b)(2). As with strict requirements regarding the contents of the notice, the ninety-day deadline exists "to protect the general contractor by fixing a date beyond which, absent notice, it will not be liable for the subcontractor's debts." See Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1437 (11th Cir. 1996); United States ex rel. Barber Coleman Co. v. U.S. Fid. & Guar. Co., 19 F.3d 1431 (Table), 1994 WL 108502, at *2-4 (4th Cir. 1994) (strictly construing ninety-day notice deadline under Miller Act); United States ex rel. John D. Ahern Co., Inc. v. J.F. White Contracting Co., 649 F.2d 29, 32 (1st Cir. 1981) (same).

---

entitled to an 'equitable lien for the improvements made' on a quantum meruit theory.") (quoting Shubert v. Speir, 38 S.E.2d 835, 836 (Ga. 1946)).

Accepting the allegations contained therein as true, the Complaint fails to state a claim under the Miller Act. The Complaint acknowledges Plaintiff provided notice to Defendant Travelers outside the ninety-day window and does not allege it provided notice to Defendant J&J at all, much less within the ninety-day notice deadline of the Miller Act. Therefore, Plaintiff's claim is due to be dismissed.

Attempting to preserve the claim with allegations contained in the Complaint, Plaintiff argues its failure to provide notice within the proscribed timeframe should be excused because Defendant J&J concealed the identity of the surety. Plaintiff's argument is irrelevant. The Miller Act provides a mechanism to discover the surety's identity and requires notice to the contractor, not the surety. 40 U.S.C. §§ 3133(a), (b)(2).

After Moving Defendants filed their motions to dismiss, Plaintiff endeavored to transcend the allegations in the Complaint to correct course. First, Plaintiff attached a number of documents to its responses to Moving Defendants' motions to dismiss. Second, Plaintiff argued that the documents evidenced substantial compliance with the Miller Act notice requirements. Third, Plaintiff argued the Court should convert Moving Defendants' motions into motions for summary judgment.

The Court need not address whether the extrinsic evidence satisfied the Miller Act's notice requirements. For the reasons

contained in Section II(B), *supra*, the Court is not considering the extrinsic evidence, and therefore, not converting the motions into motions for summary judgment. Upon realizing it had incorrectly pleaded its Miller Act claim, Plaintiff could have attempted to replead the claim through an amended complaint. Instead, Plaintiff, as the non-movant, sought to backdoor its way around Defendants' motions to dismiss. Based solely on the allegations in the Complaint, Plaintiff failed to provide notice to Defendant J&J within the ninety-days of completing its work on the Project. Accordingly, Plaintiff's claim under the Miller Act is dismissed.[14]

### 5. Bad Faith Failure to Settle

Plaintiff asserts a claim against Defendant Travelers for its bad faith refusal to settle.[15] Absent coverage under the bond, no

---

[14] Ordinarily, when the district possesses federal question jurisdiction and the federal claim giving rise to that jurisdiction is dismissed leaving only state law claims, the district court will dismiss the case to allow the state courts to resolve the remaining state law claims. Plaintiff's Complaint lacks any allegations regarding the existence of diversity jurisdiction. (See Compl., ¶ 8.) Upon review of the allegations in the Complaint, however, independent diversity jurisdiction may exist. Defendants do not raise the issue. Accordingly, the Court retains the action.

[15] Although Plaintiff appears to only assert the bad faith refusal to settle claim against Defendant Travelers, because Plaintiff asks the Court to enter judgment jointly and severally against Defendants, Defendant J&J moves to dismiss this claim against it. Georgia recognizes claims of bad faith against sureties and insurers. O.C.G.A. §§ 10-7-30, 33-4-6; Cotton States Mut. Ins. Co. v. Brightman, 580 S.E.2d 519, 521 (Ga. 2003) ("An insurance company may be liable . . . based on the insurer's bad faith or negligent refusal to settle . . . ."); see also Simmons v. Harleysville Ins. Co., No. 4:18-cv-55, 2019 WL 1922048, at *4 (S.D. Ga. Feb. 19, 2019) ("By its express terms [O.C.G.A. § 33-4-6(a)] applies only to insurers.") (quoting Gardner & White Consulting Servs., Inc. v. Ray, 474 S.E.2d 663, 664 n.2 (Ga. Ct. App. 1996)). Plaintiff has not alleged facts indicating Defendant J&J is an insurer, surety, or otherwise subject to a claim for bad faith. Thus, to the extent Plaintiff asserts such a claim against Defendant J&J, it is **DISMISSED**.

recovery for bad faith is permitted. See Cowart v. Nautilus Ins. Co., No. 4:17-cv-142, 2019 WL 254662, at *9 (S.D. Ga. Jan. 17, 2019). As concluded above, Plaintiff failed to state a claim under the Miller Act. Because Plaintiff's bad faith refusal to settle claim hinges on the alleged fact that Defendant Travelers wrongfully failed to pay Plaintiff under the surety bond in bad faith, Plaintiff's bad faith refusal to settle claim must be dismissed.[16]

### III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant Travelers's motion to dismiss (Doc. 10) is **GRANTED**. The Clerk is directed to **TERMINATE** all other motions, if any, pertaining to Defendant Travelers. **IT IS FURTHER ORDERED** that Defendant J&J's motion to dismiss (Doc. 6) is **GRANTED IN PART** and **DENIED IN PART**. Counts I, III, and IV of Plaintiff's Complaint, to the extent they are asserted against Defendant J&J, are **DISMISSED**.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[16] Defendant Travelers further argues that Georgia law governing bad faith is inapplicable to Miller Act cases. See United States v. All Am. Bldg. Sys., Inc., 857 F. Supp. 69, 70 (N.D. Ga. 1994). Following the findings contained herein, the Court need not address this issue.