IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA ex
rel. DIXIE COMMUNICATIONS
SYSTEMS, INC.,

    Plaintiff,

       v.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA; ICON
CONSTRUCTION, INC.; and J&J
MAINTENANCE, INC.,

    Defendants.

                CV 118-210

## O R D E R

Before the Court is Defendant J&J Maintenance, Inc.'s ("Defendant J&J") motion for summary judgment (Doc. 57). For the following reasons, Defendant J&J's motion is **GRANTED**.

## I. BACKGROUND

The present dispute arises from a project at Fort Gordon involving the construction and renovation of the Dwight D. Eisenhower Army Medical Center's Fisher Army Dental Laboratory (the "Project"). (Def. J&J's Statement of Undisputed Material Facts ("Def.'s SUMF"), Doc. 57-3, ¶ 1.) Defendant J&J served as the prime contractor for the Project. (Id. ¶ 2; Pl.'s Resp. in Opp'n to Def. J&J's Mot. for Summ. J. ("Pl.'s Resp. in Opp'n"),

Doc. 59, at 2.)   Defendant J&J subcontracted with Defendant ICON Construction, Inc. ("Defendant ICON") to perform work on the Project.   (Pl.'s Resp. in Opp'n, at 2; Def.'s SUMF, ¶ 2.) Defendant ICON then subcontracted with Plaintiff, Dixie Communications, Inc. ("Dixie"), to install alarm systems. (Pl.'s Resp. in Opp'n, at 2; Def.'s SUMF, ¶ 3.)   However, Plaintiff and Defendant J&J did not enter into any express contract.   (Def.'s SUMF, ¶ 4.)

After Plaintiff completed the work required under its subcontract with Defendant ICON, it submitted a bill to Defendant ICON in the amount of $66,187.50.   (Pl.'s Resp. in Opp'n, at 2; Def.'s SUMF, ¶ 5.)   Defendant ICON has yet to submit payment to Plaintiff.[1]   (Def.'s SUMF, ¶ 8.)   After multiple attempts to obtain bonding information, Plaintiff sought payment from Defendant Travelers Casualty and Surety Company of America ("Defendant Travelers") through Defendant J&J's bond.   (Pl.'s Resp. in Opp'n, at 2-3.)   Defendant Travelers repudiated Plaintiff's request for payment.   (See Doc. 10, Ex. A.)

Plaintiff then filed the present action on December 5, 2018 against Defendants Travelers, ICON, and J&J.   (Compl., Doc. 1, at 1.)   On February 15, 2019, Defendant J&J filed a suggestion of bankruptcy indicating Defendant ICON filed for Chapter 11

---

[1] The Parties do not dispute that Defendant J&J compensated Defendant ICON for its work under their contract.   (Def.'s SUMF, ¶ 6, 8.)

bankruptcy in the United States Bankruptcy Court for the Eastern District of Texas, and thus all claims against it are stayed. (See Docs. 24, 24-1.)   On September 23, 2019, the Court granted Defendant Travelers' motion to dismiss and no claims remain against it.   (Sept. 23, 2019 Order, Doc. 38.)   Additionally, the Court dismissed all claims against Defendant J&J except for Plaintiff's *quantum meruit* claim.   (Id.)   Defendant J&J then filed the present motion for summary judgment on October 1, 2020.   (Doc. 57.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).   The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)

3

(citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. <u>Anderson</u>, 477 U.S. at 255.

The moving party, which is Defendant J&J, has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, as Plaintiff does here, the movant has two options as to how it can carry its initial burden. <u>Id.</u> at 1115-16. The movant may demonstrate an absence of evidence to support the nonmovant's case, or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. <u>Id.</u>

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Id.</u> The non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with

4

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided all parties notice of Defendant J&J's motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 58.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is now ripe for consideration.

### III. *QUANTUM MERUIT*

Plaintiff brings a claim against Defendant J&J for *quantum meruit*, under O.C.G.A. § 9-2-7. Georgia Code Section 9-2-7 states in part: "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Based upon this statute, the Supreme Court of Georgia has established the following essential elements regarding a claim for *quantum*

*meruit*: "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." <u>Amend v. 485 Props.</u>, 627 S.E.2d 565, 567 (Ga. 2006).

The Parties do not dispute that Plaintiff performed valuable services and those services were accepted by Defendant J&J. Additionally, it is undisputed that Plaintiff was not compensated for those services. See <u>Nelson & Hill, P.A. v. Wood</u>, 537 S.E.2d 670, 675 (Ga. Ct. App. 2000) ("To recover in [*quantum meruit*], the plaintiff must show that he has not already been compensated the reasonable value for the goods or services he conferred on the defendant."). Thus, elements (3) and (4) are the only elements at issue. Specifically, Defendant J&J argues that Plaintiff's *quantum meruit* claim fails because (1) Plaintiff had no expectation of payment from Defendant J&J at the time of rendering services and (2) Defendant J&J was not unjustly enriched. (See Doc. 57, at 1-2.)

## A. Expectation of Payment

Plaintiff must show it "expected compensation at the time services were rendered." <u>Amend</u>, 627 S.E.2d at 567. Defendant J&J argues that the evidence shows Plaintiff did not expect payment from it. In response, Plaintiff argues that it expected payment from Defendant J&J's bond, in the event that Defendant ICON failed

to pay, and thus, it is entitled to make a claim for *quantum meruit* against Defendant J&J, the holder of the bond.   (See Doc. 59, at 7-11.)   Therefore, the Court must determine whether an expectation of payment from Defendant J&J's bond equates to an expectation of payment by Defendant J&J for purposes of a *quantum meruit* claim.

As an initial matter, the Court previously dismissed Plaintiff's claim under the Miller Act. (See Sept. 23, 2019 Order, at 18-20.)   Thus, Plaintiff does not have a claim against the bond itself.   Despite this, Plaintiff argues it "was a third party intended beneficiary of the payment bond obtained by J&J for payment to Dixie should ICON fail to fulfill payment under the contract." (Doc. 59, at 10.)

Plaintiff cites to W. Sur. Co. v. APAC-S.E., Inc. for support. 691 S.E.2d 234 (Ga. Ct. App. 2010).   In Western, Bruce Albea Contracting, Inc. ("Albea"), the general contractor on a highway project, entered into a subcontract for asphalt paving with APAC-Southeast, Inc. ("APAC").   Id. at 236.   Albea and its sureties executed a payment bond that covered "all persons doing work or furnishing skill, tools, machinery, or other materials under . . . [the] project."   Id. (internal quotation marks omitted).   APAC later assigned its rights under its subcontract with Albea to C.W. Matthews Contracting Company ("Matthews"), which was not allowed per the terms of the subcontract.   Id. at 236-37.   Prior to the assignment, Albea owed APAC over $1.2 million.   Id. at 237.   For

7

months after the assignment, "Matthews performed work for Albea, and Albea paid Matthews for that work." Id. Then, Albea's finances deteriorated and its sureties paid Matthews for work on the project not paid by Albea. Id. Albea then "requested that its sureties pay APAC the outstanding $1.2 million for the work performed before the assignment." Id. APAC was not paid and it "sued Albea for nonpayment under the subcontract." Id.

The Court of Appeals of Georgia found "that APAC's assignment of the subcontract amounted to breach sufficient to abrogate any claim under [the] subcontract." Id. However, the court found that APAC was a beneficiary of the bond held by Albea and thus "stated a cause of action against the sureties." Id. at 238. Since Albea and its sureties agreed to be jointly and severally liable for sums in the payment bond, the Court also granted summary judgment to APAC against Albea. Id. at 239.

Western does not help the Court with the present motion because the plaintiff in Western was suing APAC under the bond, for which APAC was liable. Any argument that Defendant J&J is liable for payment under the bond fails because the Court previously dismissed Plaintiff's Miller Act claim. Here, the Court must determine whether Plaintiff, as a sub-subcontractor that contracted with Defendant ICON, expected payment from Defendant J&J for its services because of the existence of the bond held by Defendant J&J. No case Plaintiff cites answers this issue.

Defendant J&J avers that no Georgia court has addressed this issue and directs the Court to Massachusetts case law. <u>See</u> <u>James C. Grant Co., Inc. v. R.A.D. Steel, Inc.</u>, No. 0254CV0942, 2003 WL 22456916 (S.D. Ma. Oct. 7, 2003). In <u>James</u>, the owner hired a general contractor to build a television studio. <u>Id.</u> at *1. The general contractor hired C & I Steel, Inc. ("C&I") "to fabricate the steel framework for the building." <u>Id.</u> Continental Insurance Company ("Continental") "issued a payment bond for C&I." <u>Id.</u> C&I then subcontracted with R.A.D. Steel, Inc. ("R.A.D.") "to erect the steel." <u>Id.</u> R.A.D. then hired James G. Grant Co., Inc. ("Grant"), the plaintiff, to provide crane services. <u>Id.</u>

R.A.D. failed to pay Grant for its services so Grant sued C&I under a theory of *quantum meruit* and sued Continental under the bond. <u>Id.</u> at *1. As for the *quantum meruit* claim, Grant argued that because C&I hired Continental to issue a payment bond that included it, C&I knew Grant expected to be paid by C&I, if not paid by R.A.D. <u>Id.</u> at *3. However, the Massachusetts District Court found there was "no reasonable expectation of payment from C&I to Grant" because Grant had an express contract with R.A.D., not C&I, and the bond terms required Continental to pay Grant upon R.A.D.'s failure to pay, not C&I. <u>Id.</u>

The court went on to say that Plaintiff's assumption that *quantum meruit* applied in the case was flawed because "[r]ecovery in [*quantum meruit*] presupposes that no valid contract covers the

subject matter of a dispute.  Where such a contract right exists, the law need not create a [*quantum meruit*] right to receive compensation for services rendered." Id. (quoting <u>Boswell v. Zephyr Lines, Inc.</u>, 606 N.E.2d 1336, 1342 (Mass. 1993)).  Georgia courts, on the other hand, only require that no "express and implied contract for the same thing exist[] at the same time between the same parties." <u>Gerdes v. Russell Rowe Commc'ns, Inc.</u>, 502 S.E.2d 352, 355 (Ga. Ct. App. 1998) (quoting <u>Fonda Corp. v. S. Sprinkler Co.</u>, 241 S.E.2d 256, 260 (Ga. Ct. App. 1977)).  However, Plaintiff's express contract with Defendant ICON weighs against finding that Plaintiff expected payment from Defendant J&J.

Here, Plaintiff contracted with Defendant ICON, not Defendant J&J.  Plaintiff performed the work based on its express contract with Defendant J&J, not based on any implied contract.  See <u>Scott v. Mamari Corp.</u>, 530 S.E.2d 208, 212 (Ga. Ct. App. 2000) ("[T]he law will not imply a promise contrary to the intention of the parties." (citation omitted)).  There is no evidence that Plaintiff expected payment from Defendant J&J at the time it rendered its services.  And, even if Plaintiff expected payment from Defendant J&J's bond at that time, it has not directed the Court to any evidence that Defendant J&J itself would be liable for any payment under the bond like in <u>Western</u>.  Thus, the Court finds Defendant J&J is entitled to summary judgment.

**B. Failure to Compensate Would be Unjust**

Even if Plaintiff expected payment from Defendant J&J, it does not have a claim for *quantum meruit* because Defendant J&J's receipt of Plaintiff's services without compensating Plaintiff would not be unjust. It important to note that *quantum meruit* is an equitable doctrine. See Nextel S. Corp. v. R.A. Clark Consulting, Ltd., 596 S.E.2d 416, 419 (Ga. Ct. App. 2004) (noting *quantum meruit* is an equitable doctrine that literally means "as much as he deserves" (citations omitted)). Thus, "[a]lthough the remedy of [*quantum meruit*] was developed as part of the common law of contracts to avoid unjust enrichment under a contract implied by law, equitable considerations influence the determination of whether recovery is warranted in a given case." U.S. for Use & Ben. of E. Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 781 (11th Cir. 1990) (citing Constantino v. Am. S/T Achilles, 580 F.2d 121, 123 n.2 (4th Cir. 1978)). Plaintiff's argument that "[t]he question is not whether J&J was unjustly enriched, but whether it would be unjust not to pay the Plaintiff for the services rendered" ignores these equitable principles. (Doc. 59, at 12.) Moreover, Georgia courts do not strictly construe the "unjust" element. See Jackson v. Ford, 555 S.E.2d 143, 148 (Ga. Ct. App. 2001) ("The equitable doctrine of [*quantum meruit*] prevents a person who benefits from another's services to be unjustly enriched by those services."); Hollifield v. Monte Vista Biblical Gardens, Inc., 553

S.E.2d 662, 668 (Ga. Ct. App. 2001) (listing the "recipient's receipt of [services] without compensating the provider would be unjust" as an element of *quantum meruit*); <u>Memar v. Jebraeilli</u>, 694 S.E.2d 172, 175 (Ga. Ct. App. 2010) ("[*Quantum meruit*] is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby." (citations omitted)).

The Court finds that requiring Defendant J&J to pay Plaintiff, whom it did not enter into a contract with, after fulfilling its obligations under its contract with Defendant ICON, who hired Plaintiff, would not be equitable. Although Georgia courts have not yet addressed this issue, and likely will not due to the state's lien statutes, other states have. For example, "[u]nder Florida law, a subcontractor can recover in [*quantum meruit*] from the owner, even though the subcontractor had a contract with the general contractor, if the owner had received a benefit from the subcontractor's work *and the owner had not paid for that work under the owner's own contract* with the general." <u>Martin Energy Servs., LLC v. M/V BRAVANTE IX</u>, 733 F. App'x 503, 506 (11th Cir. 2018) (emphasis added); <u>see also</u> <u>J.R. Hale Contracting Co. v. Union Pac. R.R.</u>, 179 P.3d 579, 599 (N.M. Ct. App. 2007) ("Generally, a subcontractor has no right to claim [*quantum meruit*] against an owner when the owner has paid all or substantially all of what it owes under its contract with the prime contractor.").

The Court's decision is also consistent with the abundance of precedent cited by Defendant J&J that analyzes whether a party was unjustly enriched. (See Doc. 57, at 9 n.2.) An Ohio court, for example, found a general contractor that satisfied its contract with its subcontractor was not unjustly enriched when the plaintiff was not paid under its contract with the subcontractor because "[t]he subcontractor . . . was paid in full; hence, defendants have paid for any materials that they received by virtue of the contract between plaintiff and the subcontractor. The defendants have not received something for nothing." New Haven Supply Co. v. Murphy, 584 N.E.2d 1319, 1322 (Ohio Ct. App. 1989). Here, Defendant J&J has not received "something for nothing." Id.; see also Fairfield Ready Mix v. Walnut Hills Assocs., Ltd., 572 N.E.2d 114, 116 (Ohio Ct. App. 1988) ("The doctrine of unjust enrichment is that a person will not be allowed to profit or enrich himself inequitably at another's expense. . . . As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other[.]" (citations omitted)).

Plaintiff argues the cases Defendant J&J cites are inapplicable because they analyze claims for unjust enrichment instead of quantum meruit. However, "[quantum meruit] and unjust enrichment are nearly identical theories[.]" Simpson v. Carolina Builders Corp., No. 1:03-CV-0758, 2005 WL 8157403, at *7 (N.D. Ga. Mar. 15, 2005). The only difference in the two theories is that

*quantum meruit* "relies upon an implied promise of compensation." Cochran v. Ogletree, 536 S.E.2d 194, 197 (Ga. Ct. App. 2000). *Quantum meruit* will allow recovery when a "contract is void, is repudiated, or can only be implied." Watson v. Sierra Contracting Corp., 485 S.E.2d 563, 570 (Ga. Ct. App. 1997). In contrast, "if no express or implied contract arose between the parties, an obligation to pay arises upon the theory of unjust enrichment[.]" Id. Both theories of recovery "lie[] when it would be inequitable for defendant to retain a benefit conferred by plaintiff without paying for it." Simpson, 2005 WL 8157403, at *7 (citing Nova Info. Sys., Inc. v. Greenwich Ins. Co., 365 F.3d 996, 1006-07 (11th Cir. 2004)).

"The retention of a benefit is not unjust where defendants have paid for it." Morrisville Lumber Co. v. Okcuoglu, 531 A.2d 887, 889 (Vt. 1987). "To allow plaintiff to recover in these circumstances would be to require defendants to pay twice." Id. Thus, the Court finds it is not equitable for Plaintiff to recover from Defendant J&J. Accordingly, summary judgment on Plaintiff's claim for *quantum meruit* against Defendant J&J is appropriate.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant J&J's motion for summary judgment (Doc. 57) is **GRANTED**.[2]

Defendant ICON is the only remaining defendant in this case. Pursuant to 11 U.S.C. § 362, proceedings before this Court must be stayed until the Bankruptcy Court grants relief from the stay, closes the bankruptcy case, or dismisses the bankruptcy petition. Accordingly, this case is hereby **STAYED** until further notice. Plaintiff and Defendant ICON **SHALL** immediately notify this Court should the Bankruptcy Court grant relief from the stay, dismiss Defendant's bankruptcy petition, or otherwise close the bankruptcy proceedings with regard to Defendant ICON.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of August, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] For reasons outlined in the Court's March 27, 2020 Order (Doc. 52), the Court refrains from entering judgment pursuant to Rule 54(b).